IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

EUGENE SMITH,
        Plaintiff,

        v.

JO ANNE B. BARNHART,
Commissioner of Social
Security,
        Defendant.

Civil No. 04-247-HA

OPINION AND ORDER

DAVID B. LOWRY
9900 S.W. Greenburg Road
Columbia Business Center, Suite 235
Portland, Oregon 97223
    Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
CRAIG J. CASEY
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

DAVID J. BURDETT
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900 MS/901
Seattle, Washington 98104-7075
    Attorneys for Defendant

HAGGERTY, Chief Judge:

Plaintiff Eugene Smith brings this action for judicial review of a final decision from defendant Commissioner denying his application for disability insurance benefits (DIB) and Supplemental Security Income (SSI) payments. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). For the following reasons, this action is remanded for further proceedings.

PROCEDURAL BACKGROUND

Plaintiff applied for DIB and SSI on September 6, 2001, describing disability with an alleged onset date of December 15, 2000, arising from depression, diabetes, Hepatitis C, high blood pressure, and shortness of breath. This application was denied initially and upon reconsideration. An Administrative Law Judge (ALJ) conducted a hearing on December 30, 2002. On February 12, 2003, the ALJ issued a decision finding that plaintiff retained the capacity to perform his past relevant work as a musician, music instructor, and substance abuse counselor. This decision became the Commissioner's final decision upon the Appeals Council's denial of review. *See* 20 C.F.R. §§ 404.981, 416.1481, 422.210. Plaintiff seeks judicial review of this decision.

LEGAL STANDARDS

A person may be eligible for DIB if he or she has insured status under the Act and suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1). Persons who are sixty-five years old or older, blind, or disabled, may be eligible for SSI regardless of their insured status under the Act. *See* 42 U.S.C. § 1382(a).

A claimant is considered disabled for purposes of receiving DIB or SSI benefits if he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). A person can be disabled for these purposes only if his or her impairment is of such severity that the person is not only unable to perform previous work but cannot, considering the person's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for DIB or SSI payments. 20 C.F.R. §§ 404.1520, 416.920; *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999) (DIB); *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989) (SSI).

First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If so, disability benefits are denied. If not, the Commissioner proceeds to step two and determines whether the claimant has a medical impairment that meets the regulatory definition of "severe." 20 C.F.R. §§ 404.1520(a), 416.920(a). If the claimant does not, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c).

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to any of a number of impairments that the Commissioner acknowledges to be so severe that they are presumed to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d). These are listed in 20 C.F.R. Part 404, Subpart P, Appendix

1 (Listing of Impairments). If the claimant's condition meets or equals one in the Listing of Impairments, the claimant is presumed conclusively to be disabled.

If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work that the claimant has performed in the past. If the claimant is able to perform his or her former work, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e), 416.920(e).

If the claimant is unable to perform work which he or she has performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The claimant is entitled to disability benefits if he or she is not able to perform any other work. 20 C.F.R. §§ 404.1520(f), 416.920(f).

The claimant bears the initial burden of establishing his or her disability. In the five-step framework used by the Commissioner, the claimant has the burden of proof as to steps one through four. At step five, the burden shifts to the Commissioner to show there are a significant number of jobs in the national economy that the claimant can perform given his or her functional capacities and age, education and work experience. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996) (DIB); *Andrews v. Shalala,* 53 F.3d 1035, 1040 (9th Cir. 1995) (SSI). If the Commissioner cannot meet this burden, the claimant is considered disabled for the purposes of awarding benefits under the Act. 20 C.F.R. §§ 404.1520(f)(1), 416.920(f)(1).

The Commissioner has an affirmative duty to develop the record. 20 C.F.R. §§ 404.1512(d), 416.912(d); *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991). In this sense,

the proceedings are not adversarial and the Commissioner shares the burden of proof with the claimant at all stages. *Id.*; *Tackett,* 180 F.3d at 1098 n. 3.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett*, 180 F.3d at 1098. Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. *Id.* Substantial evidence is more than a mere scintilla, but not necessarily a preponderance, of evidence. *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003). This court must uphold the Commissioner's denial of benefits even if the evidence is susceptible to more than one rational interpretation, as long as one of the interpretations supports the decision of the ALJ. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Tackett*, 180 F.3d at 1098. The Commissioner, not the reviewing court, must resolve conflicts in the evidence, and the Commissioner's decision must be upheld in instances in which the evidence would support either outcome. *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998).

FACTS

Plaintiff's medical history is known to the parties and need not be recited here. The relevant background has been presented thoroughly by both parties and will be referred to only where necessary in this Opinion. Plaintiff was sixty-three years old at the time of the hearing decision. He worked previously as a musician and a drug and alcohol counselor, and currently works three hours a week during the school year as a music instructor at a community college.

Plaintiff gave up the counseling job when he began suffering from depression and could not keep up with the job's paperwork. He believes he could conduct or teach music for a few hours a week, but would be unable to work full time without significant breaks.

The ALJ determined that plaintiff had not engaged in substantial gainful activity since his alleged disability onset date, and that plaintiff suffered from impairments or combinations of impairments that were severe, and that these impairments did not meet or equal the requirements of a listed impairment. The ALJ also concluded that plaintiff maintained the residual functional capacity (RFC) to perform light work, and that plaintiff could perform his past relevant work as a musician, music instructor, or substance abuse counselor. Accordingly, the ALJ did not reach a determination regarding whether plaintiff could adjust to performing other available jobs existing in significant numbers in the national economy.

QUESTION PRESENTED

Plaintiff contends that this court should reverse and remand the Commissioner's final decision because: the ALJ (1) improperly evaluated medical source statements; (2) improperly evaluated plaintiff's RFC; (3) erroneously concluded that plaintiff could perform past relevant work; (4) improperly rejected plaintiff's testimony; (5) improperly rejected lay witness testimony; and (5) improperly dismissed plaintiff's written motions filed before his hearing. This court concludes that this action must be remanded for further proceedings concerning plaintiff's capability to perform past relevant work and plaintiff's credibility.

\\\
\\\
\\\

DISCUSSION

    1.    <u>Medical Source Statements</u>

Plaintiff first contends that the ALJ erred in rejecting medical evidence pertaining to plaintiff's depression and failing to further develop the medical record. The ALJ must evaluate credibility, resolve conflicts in medical testimony, and clarify ambiguities. *Reddick*, 157 F.3d at 722. The ALJ resolves conflicts in the medical evidence when that evidence is not conclusive. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

"Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989)). The standards for rejecting expert opinions are well-settled: an ALJ must provide clear and convincing reasons for rejecting uncontroverted expert opinion, and must provide specific, legitimate reasons for rejecting controverted expert opinion. *Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1995); *see also Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) (clear and convincing reasons must be provided to support rejection of a treating physician's ultimate conclusions). An ALJ need not accept a treating physician's opinion that is conclusory, brief, and unsupported by clinical findings. *Tonapetyan*, 242 F.3d at 1149 (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)). However, an ALJ must give weight not only to the treating physician's clinical findings and interpretation of test results, but also to the doctor's subjective judgments. *Lester*, 81 F.3d at 832-33 (citing *Embrey*, 849 F.2d at 422).

Here, plaintiff contends that the ALJ erred by failing to adopt the opinions of Dr. Lisa Sjodin, a physician who examined plaintiff in November 2001, and Dr. Peter LeBray, a non-examining physician retained by the Disability Determination Services who filed a report dated December 11, 2001. Tr. 209. These medical opinions are addressed in turn.

Dr. Sjodin conducted a psychiatric evaluation of plaintiff as requested by the state agency to further assess plaintiff's claim for disability benefits. She diagnosed depression and offered a "guarded" prognosis for improvement. Tr. 313-14.

The ALJ first discussed Dr. Sjodin's evaluation in his determination regarding the extent of plaintiff's mental impairments. Tr. 21. The ALJ noted that at least two "functional areas" must be markedly limited for a claimant's mental impairment to be considered sufficiently severe as to be disabling. *Id*. The ALJ then reviewed Dr. Sjodin's findings thoroughly. *Id*. at 21, 24-25. The ALJ acknowledged Dr. Sjodin's diagnosis of "Major Depressive Disorder, chronic." Tr. 24. The ALJ noted that Dr. Sjodin examined plaintiff only once, as part of plaintiff's application for benefits, that the record lacked additional evidence from treating physicians or psychologists regarding any severe psychological limitations, and that the evidence presented failed to support any findings of non-exertional limitations interfering with his ability to perform "light level[s] of exertion." Tr. 24-25. The ALJ did not reject Dr. Sjodin's opinions, but instead conducted a proper analysis to determine whether the doctor's findings could establish or help establish that plaintiff was entitled to disability benefits.

In so doing, the ALJ also turned to the non-examining sources available in the record, including the opinion of Dr. LeBray. Dr. LeBray opined that plaintiff was moderately limited in (1) maintaining concentration, persistence, or pace; (2) understanding or remembering or

carrying out detailed instructions; and (3) interacting appropriately with the general public. Tr. 219, 223-24. Dr. LeBray also indicated that plaintiff was not significantly limited in any other measured area, was able to interact appropriately with others but "would do best in a work setting that did not require frequent public contact," and was able to understand, remember, and carry out simple instructions. Tr. 226. Dr. LeBray also commented that plaintiff did not seem unhappy or overly depressed. Tr. 221. The ALJ acknowledged that Dr. LeBray found plaintiff moderately limited in understanding, remembering, or carrying out detailed instructions and interacting appropriately with the general public. However, the ALJ elected to rely upon the assessments offered by Dr. Lawrence Duckler, who testified as a medical expert at plaintiff's hearing. The ALJ explained that Dr. Duckler's views benefitted from access to the entire medical record, which included more sources than Dr. LeBray was provided. Tr. 25.

The ALJ's analysis in this regard is sound. He accepted the medical opinions that plaintiff suffers from depression, Tr. 26, and reviewed the evidence and record thoroughly before concluding that plaintiff's mental impairment did not meet or equal a listing or prevent plaintiff from performing past relevant work. Plaintiff contends that the ALJ's analysis of Dr. LeBray's evaluation is flawed because the ALJ's summary of that evaluation at Tr. 25 omitted Dr. LeBray's finding that plaintiff is moderately limited in concentration, persistence or pace. However, the ALJ acknowledged explicitly that Dr. LeBray reported moderate difficulties in sustaining concentration, persistence or pace. Tr. 21. The ALJ also noted that Dr. Sjodin observed slightly impaired concentration, adequate persistence, and good pace during her examination of plaintiff. *Id.* The ALJ's inquiry into plaintiff's mental impairment was thorough and searching, and addressed all of the possible limitations noted throughout the record. To the

extent that there were conflicts in the medical evidence, the ALJ provided adequately specific and legitimate reasons for his analysis. Although the medical evidence might also yield other interpretations more favorable to plaintiff, the ALJ's interpretation of the expert opinions was rational, and this court must uphold any aspect of the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (quotation marks and citation omitted) *see also Andrews*, 53 F.3d at 1041 (when the evidence before the ALJ is subject to more than one rational interpretation, the court defers to the ALJ's conclusion).

    2.    <u>Plaintiff's RFC</u>

Plaintiff next argues that the ALJ erred in determining that plaintiff is capable of performing light work. In supporting this conclusion, the ALJ wrote:

> the evidence supports a finding that the claimant retains the residual functional capacity to perform light exertion work. * * * In reaching my assessment of Mr. Smith's residual functional capacity, I have considered his own subjective allegations through his testimony and written statements of record. I have also considered the written statements of record provided by May Simone, his friend; and a human resources generalist at the DePaul Treatment Centers, his former employer.

Tr. 22.

As outlined above, the ALJ also carefully reviewed the medical evidence and fairly resolved the limited conflicts in the medical opinions proffered. Plaintiff's contention that the ALJ "simply ignored" impairments such as depression, diabetes, and Hepatitis is without merit. The ALJ concluded that each of these impairments are suffered by plaintiff, Tr. 26, and addressed plaintiff's depression thoroughly, noted plaintiff's diagnosis of diabetes multiple times ( Tr. 20, 21, 23, and 24), and discussed plaintiff's Hepatitis (Tr. 20, 23-24). Far from "ignoring"

10 -- OPINION AND ORDER

these impairments, the ALJ acknowledged the impairments and scrutinized the record for evidence that might establish an eligibility for benefits. Despite counsel's repeated allegations that the ALJ ignored evidence regarding plaintiff's impairments, a fair examination of the record establishes that the ALJ properly identified the impairments plaintiff claimed, and properly evaluated all of the evidence presented to determine whether plaintiff qualified for disability benefits. Substantial evidence supports the ALJ's conclusion that plaintiff is capable of performing light work. His human resources generalist from his last job reported that plaintiff retired and that he could stand or walk for up to four hours and lift ten to twenty pounds. She was unaware of any illness or injury. This evidence was relied upon fairly by the ALJ. Tr. 22. The ALJ also noted that plaintiff denied fatigue, night sweats, or any other significant gastrointestinal system complaints to his examining doctor, Dr. Timothy Burke. Tr. 23-24. Plaintiff's allegations that the ALJ's conclusions were unsupported by substantial evidence are without merit.

Relatedly, however, plaintiff argues that the ALJ erred in failing to perform a functional analysis of his capabilities and comparing them to those capabilities required in his prior work. As noted above, the ALJ is charged at step four of the sequential process with examining the claimant's residual functional capacity and the physical and mental demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(e). A claimant who is able to perform either (1) the actual functional demands and job duties of a particular past relevant job; or (2) the functional demands and job duties of the occupation as generally required by employers throughout the national economy, must be found not disabled at step four. *Pinto v. Massanari*, 249 F.3d 840, 844-45 (9th Cir. 2001).

11 -- OPINION AND ORDER

As also noted above, the burden of proof is on the claimant at step four. However, the Social Security Regulations (SSR) require that the ALJ undertake a "function-by-function" analysis of the claimant's capacity to work according to exertional categories, and the ALJ has the duty to make the requisite factual findings to support the ALJ's conclusion. *See* SSR 82-62.

The ALJ's RFC assessment of a claimant must include a narrative discussion describing how the evidence supports each conclusion, and must be based on all of the relevant evidence in the record, including the effects of symptoms that are reasonably attributed to a medically determinable impairment. *See* SSR 96-8p. Information about symptoms must be given "careful consideration." *Id*. The ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe,' " because such limitations may be outcome determinative when considered in conjunction with limitations or restrictions resulting from other impairments. *Id*.

The RFC assessment must first identify the claimant's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light medium, heavy, and very heavy. SSR 96-8p.

Here, at the fourth step of the sequential analysis, the ALJ found that plaintiff could perform light work. The ALJ adopted findings as to plaintiff's functional capacity made by the human resources generalist where he was last employed, including a report that plaintiff could stand and/or walk for two to four hours and lift ten to twenty pounds. Tr. 22. The report also indicated that plaintiff "retired" from his employment and did not quit or get fired because of injuries or illness. *Id*.

The ALJ went on to acknowledge, however, that the generalist's other responses regarding plaintiff's capabilities indicated that the generalist either did not know plaintiff or lacked sufficient knowledge to answer the questions being asked. Tr. 23. This should have compelled the ALJ to develop the record to obtain a better assessment of plaintiff's functional capacity, and how that capacity compared with the functional demands and job duties of his past relevant job. Instead, The ALJ proceeded to explain his scrutiny of the medical evidence that led to the determination that plaintiff's RFC is not restricted by non-exertional limitations. Tr. 23-25. The ALJ also relied upon the testimony of an impartial vocational expert (VE) who attended plaintiff's hearing and identified the classifications of plaintiff's past work. Working as a substance abuse counselor is rated as sedentary and skilled, working as musician is rated as light and skilled, and working as a music instructor is rated as light and skilled. Tr. 25; Tr. 368-69. While this information assisted the ALJ in making his conclusions, his findings nevertheless lacked the function-by-function analysis required the regulations.

A fair review of the ALJ's decision establishes that the ALJ, while adequately supporting his findings that plaintiff retained a RFC for light exertion work, fell short of providing the requisite functional analysis of plaintiff's capabilities and the comparison of them to those capabilities required in plaintiff's prior work.

      3.     <u>Plaintiff's Testimony</u>

Plaintiff next complains that the ALJ erred in finding that plaintiff was "not entirely credible." Tr. 23. In evaluating a claimant's claim of subjective symptom testimony, the ALJ must determine whether the claimant has produced objective medical evidence of an underlying

impairment which could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529(a); *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996).

In addition to medical evidence, factors relevant to the ALJ's credibility determination include: plaintiff's daily activities; the location, duration, frequency, and intensity of his or her symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication; treatment, other than medication; measures used to relieve symptoms; and functional limitations caused by the symptoms. *Id.* at 1284; 20 C.F.R. § 404.1529(c)(3). "The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284.

In determining that subjective testimony is not credible, the ALJ may rely on (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001) (citations omitted).

In sum, if the plaintiff has met the burden of showing that his or her impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of the symptoms that the plaintiff's testimony describes, and there is no evidence suggesting that the plaintiff is malingering, the ALJ may not reject testimony regarding the severity of the plaintiff's symptoms unless there are clear and convincing reasons, supported by substantial evidence, for doing so. *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999).

In this case, plaintiff produced some objective medical evidence of underlying impairments. However, the ALJ's findings rejected plaintiff's testimony without providing specific, clear and convincing reasons for this rejection. The ALJ noted that the record lacked evidence that plaintiff followed up with therapy or treatment with Dr. Burke. Tr. 24. Extrapolating diminished credibility from this omission in the record, as the ALJ did, falls short of the clear and convincing standard described above. Moreover, the ALJ's references to Dr. Sjodin's observations that plaintiff was engaging in normal activities of daily living, his concentration and pace were good, and he was maintaining part-time employment as a music instructor, lacked specificity regarding the relevance, if any, of these observations to plaintiff's credibility.

    4.    <u>Lay witnesses</u>

Plaintiff next asserts that the ALJ improperly rejected the statements and questionnaire answers from lay witness May Simone. This witness completed a questionnaire sent to her by the Social Security Administration in November 2001, and also corroborated plaintiff's testimony about his difficulties.

Friends and family members and others in a position to observe a claimant's symptoms and daily activities are competent to testify as to the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Such testimony cannot be disregarded without comment. *Nguyen v. Chater*, 100 F3d 1462, 1467 (9th Cir 1996). If the ALJ wishes to discount lay witness testimony, the ALJ must give reasons that are germane to each witness. *Id*.

Here, the ALJ acknowledged that Simone attempted to portray plaintiff as limited in dealing with co-workers, sustaining concentration, as well in other ways. Tr. 23. The ALJ also

acknowledged that Simone submitted responses to the questionnaire. *Id*. The ALJ also provided reasons for discounting this evidence that were sufficiently germane to Simone. These reasons included that her statements regarding plaintiff's limitations were contradicted in part by plaintiff himself, and that her questionnaire answers addressed plaintiff's functional capacities, and that other witnesses, professionals with expertise in such areas, provided information in this regard that the ALJ elected to rely upon more heavily. *Id*.

     5.     <u>Pre-Hearing Motions</u>

Finally, plaintiff contends that this matter should be remanded for further proceedings because the ALJ refused to rule upon several pre-hearing motions filed by plaintiff's counsel, and then elected to omit these motions from the record. In light of the remand being ordered in this case, plaintiff is invited to present the evidence necessary and any issues considered helpful to assist the ALJ in determining whether plaintiff is eligible for disability benefits. Accordingly, this aspect of plaintiff's argument is rendered moot.

CONCLUSION

> Sentence four and sentence six of 42 U.S.C. § 405(g) provide:
>
> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing . . . . The court may, on motion of the Secretary made for good cause shown before he files his answer, remand the case to the Secretary for further action by the Secretary, and it may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Secretary shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm his findings of fact or his decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based.

In *Melkonyan v. Sullivan*, 501 U.S. 89, 101-03 (1991), the Supreme Court held that sentences four and six prescribe the only two kinds of remands allowed under section 405(g). In a sentence four remand, the court rules on whether the Commissioner properly considered the claimant's application for benefits. *Flores v. Shalala*, 49 F.3d 562, 568 (9th Cir. 1995). Under sentence six, by contrast, the court may remand without making a determination as to the "correctness of the Secretary's decision." *Id*. (quoting *Melkonyan*, 501 U.S. at 100).

The decision whether to remand for further proceedings turns upon the likely utility of such proceedings. *Harman v.Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). Whether to remand under sentence four is a matter of judicial discretion. *Id*. at 1177. A remand for further proceedings is unnecessary if the record is fully developed and it is clear from the record that the ALJ would be required to award benefits. *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). The rule recognizes "the importance of expediting disability claims." *Id*. In cases in which it is evident from the record that benefits should be awarded, remanding for further proceedings would needlessly delay effectuating the primary purpose of the Social Security Act, which is to give financial assistance to disabled persons because they cannot sustain themselves. *Id*.

\\\
\\\
\\\
\\\
\\\
\\\

For the reasons set out above, this court concludes outstanding issues remain that must be resolved before a determination of disability can be made. Further proceedings will be useful, and I exercise the discretion of the court to remand this case for additional administrative proceedings specifically addressing plaintiff's functional assessments and the credibility of plaintiff's testimony, as identified in this Opinion and Order. *Harman*, 211 F.3d at 1178. In light of this remand, plaintiff and Commissioner should also develop the record more thoroughly regarding the extent of plaintiff's impairments, and plaintiff is allowed leave to present again those issues addressed in his pre-hearing motions.

Pursuant to Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is REVERSED and REMANDED FOR FURTHER PROCEEDINGS consistent with this Opinion. IT IS SO ORDERED.

DATED this _14___ day of June, 2005.

          /s/Ancer L.Haggerty

          ANCER L. HAGGERTY
          United States District Judge